## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

DANIEL HAAK, individually and
behalf of all others similarly situated,

    Plaintiff,

    v.

Generac Power Systems, Inc.,

    Defendant.

Civil Action No.

COMPLAINT AND
JURY DEMAND

## CLASS ACTION COMPLAINT

1.    Plaintiff Daniel Haak ("Plaintiff" or "Mr. Haak") individually and on behalf of the other members of the Nationwide Class defined below ( the "Class") brings this Class Action Complaint (the "Complaint") against Defendant Generac Power Systems, Inc. ("Defendant" or "Generac") seeking redress and remedy arising from Generac's design, manufacture, marketing, and distribution of the SnapRS 801 switch ("SnapRS 801 switch"), a residential solar energy system component that is defective and malfunctions by turning on and off repeatedly, eventually deforming and melting during normal use.

2.    Generac designed, manufactured, marketed, and distributed to Plaintiff and Class Members the defective SnapRS 801 switch which malfunctioned, causing decreased energy production or completely impeding

1

energy production from Plaintiff's and Class Members' residential solar energy systems.  In some cases,  the defective SnapRS 801 switch deformed,  melted, and/or caught fire during normal use, causing property damage to Plaintiff's and Class Members' solar energy systems and property.

3.     Generac knew that the SnapRS 801 switch was defective as early as April 2021 and continued to manufacture, market, and distribute SnapRS 801 switches, incorporating SnapRS 801 switches as components in Generac's residential solar energy systems.

4.     Despite this knowledge, Generac failed to notify Plaintiff and Class Members that the SnapRS 801 switch was defective and could impede the production of energy from Plaintiff's and Class Members' residential solar energy systems and that the SnapRS 801 switch posed serious safety hazards.

5.     Additionally, Generac failed to timely provide replacement switches that would allow Plaintiff's and Class Members' residential solar energy systems to function properly, efficiently, and safely.

6.      Generac failed to compensate Plaintiff and Class Members for electrical bills incurred as a result of their residential solar energy systems not functioning properly and at full efficiency when these solar energy systems, if functioning properly, would have generated electrical power for most, if not all, the electrical power for the Plaintiff's and Class Members' home energy needs.

7.    Generac designed, manufactured, marketed, and distributed the defective SnapRS 801 switches to Plaintiff and Class Members without informing them that the SnapRS 801 switches were defective and could reduce or completely impede energy production from their residential solar energy systems; could deform, melt, and/or catch fire during normal use; and, cause damage to Plaintiff's and Class Members' solar energy systems and property.

8.    Plaintiff and Class Members were unaware that the SnapRS 801 switches, which they purchased as part of their residential solar energy systems, were defective and could reduce or completely impede home energy production from their residential solar energy systems; could deform, melt, and/or catch fire during normal use; and, cause damage to Plaintiff's and Class Members' solar energy systems and homes.

9.    Plaintiff and Class Members suffered damages as a result of Generac's misrepresentations and omissions regarding the SnapRS 801 switch.  Plaintiff and Class Members would not have purchased residential solar energy systems equipped with SnapRS 801 switches and solar contractors would not have installed solar energy systems in Plaintiff's and Class Members' homes if the defects and potential safety hazards of the SnapRS 801 switches had been disclosed and mitigated.

10.    Plaintiff and similarly situated Class Members are entitled to compensation for their losses, including losses related to 1) the costs for replacing the SnapRS 801 switches in their residential solar energy systems when those costs were not covered by Generac; 2) the costs for troubleshooting Plaintiff's and Class Members' residential solar energy systems when the defective SnapRS 801 switches caused other components to turn off or malfunction; 3) electrical bills incurred as a result of their residential solar energy systems not functioning properly and at full efficiency as a result of the SnapRS 801 switches decreasing or completely impeding energy production from Plaintiff's and Class Members' residential solar energy systems; and 4) damage to Plaintiff's and Class Members' residential solar energy systems and/or property as a result of the SnapRS 801 switches melting, deforming, and/or catching fire.

11.    Plaintiff makes these allegations upon personal knowledge as to himself and his own acts, and as to all other matters upon information and belief.

## **PARTIES**

**Plaintiff**

12.    Plaintiff Daniel Haak ("Mr. Haak" or "Plaintiff") is a citizen of Florida and a resident of Lake Wales, Polk County, Florida.

13.     In July 2020, Mr. Haak contracted to have a residential solar energy system installed on his home in Polk County, Florida that included 56 solar panels equipped with 56 Generac SnapRS 801 switches.

14.     Mr. Haak's residential solar energy system was designed and built to provide 100% of his home energy needs during full sunlight.

15.     Mr. Haak's residential solar energy system is equipped with a battery to store energy and supply that energy to his home for approximately 24 hours when there is not full sunlight.

16.     Following the installation, multiple Generac SnapRS 801 switches on Mr. Haak's solar energy system malfunctioned, causing decreased energy production and requiring Mr. Haak to pay for electrical power that would have been generated by his solar energy system had the SnapRS 801 switches functioned properly.

17.     Upon information and belief, the original 56 Generac SnapRS 801 switches were replaced with 56 Generac SnapRS 801A switches.

18.     While this work was performed, it was discovered that several of the original SnapRS 801 switches were deformed, melted and/or had caught fire.

19.     In addition, one of the two inverters was damaged and had emitted smoke.

20. The newly installed Generac SnapRS 801A switches also malfunctioned, causing decreased energy production and requiring Mr. Haak to pay for electrical power that would have been generated by his solar energy system had the SnapRS 801A switches functioned properly.

21. Upon information and belief, the 56 Generac SnapRS 801A switches were then replaced with 56 Generac SnapRS 802 switches.

22. Upon information and belief, the defective SnapRS 801 switches caused other components in Mr. Haak's residential solar energy system to shut off or malfunction, despite the installation of the allegedly fully functional SnapRS 802 switches.

23. To date, Mr. Haak's residential solar energy system does not function properly and at full efficiency, due to the defective Generac SnapRS 801 switches that were previously installed.

24. Mr. Haak has paid in excess of $7,000 to his electrical services provider for energy that would have been produced by his residential solar energy system had the Generac SnapRS 801 switches functioned properly.

25. The functionality of the residential solar system, of which the Generac SnapRS 801 switches were a component part, was the reason Mr. Haak proceeded with the purchase of the residential solar system.

26.     Had Mr. Haak been aware of the problems with the Generac SnapRS 801 switches and the inability of a system outfitted with those switches to function properly, as intended and as advertised, he would not have purchased the system, or would have purchased it on different terms.

**Defendant**

27.     Defendant Generac Power Systems, Inc. ("Generac" or "Defendant") is a Wisconsin corporation with a principal place of business located at S45W29290 State Road 59, Waukesha, WI 53189-9071.  Generac is registered to do business in this state, and does business in this district in a systematic and continuous fashion, through numerous authorized dealers and contractors (solar energy system installers) throughout the district.

## JURISDICTION AND VENUE

28.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d) because at least one Class Member is of diverse citizenship from Generac, there are more than 100 Class Members, and the aggregate amount in controversy exceeds $5,000,000 exclusive of costs and interest.

29.     This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's state law claims and claim pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*

30.     This Court has personal jurisdiction over Generac because Generac's contacts with the State of Florida are systematic, continuous, and sufficient to subject it to personal jurisdiction in this Court.  Specifically, Generac purposefully availed itself of the privilege of conducting business in the forum state by advertising and selling its PWRcell solar energy and battery storage systems, which included the SnapRS 801 switch at issue, within the forum state. Additionally, Generac has maintained systematic and continuous business contacts within the forum state (including with its authorized solar energy system dealers and contractors within the State) and is registered to conduct business in the State.

31.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and/or omissions giving rise to Plaintiff's claims occurred within this District.  Generac has marketed, advertised, and sold the PWRcell solar energy and battery storage systems, which included the SnapRS 801 switch at issue, and otherwise conducted extensive business within this District.

32.     Plaintiff Daniel Haak, as well as many other Class Members, purchased their PWRcell solar energy and battery storage systems, which included the SnapRS 801 switch at issue, from Generac authorized dealers and solar contractors located in this District.

## FACTS COMMON TO ALL COUNTS

**Generac PWRcell solar energy systems and the SnapRS 801 switch**

33.     Generac is a publicly traded manufacturer of energy and energy storage products and equipment.

34.     Generac represents itself as having experience and expertise in manufacturing energy and storage products and equipment, including battery storage systems, inverters, optimizers, disconnect switches, and other solar energy system components.

35.     Plaintiff and Class Members purchased one or more defective SnapRS 801 switches as part of their residential solar energy systems.

36.     Generac represented to Plaintiff and Plaintiff's residential solar contractors and Class Members and Class Members' solar contractors that its PWRcell solar energy and battery storage systems were safe, fit for the purpose for which they were intended, and that Generac was experienced and skilled in designing and manufacturing such products.

37.     As detailed herein, in the course of its business, Defendant concealed and suppressed material facts concerning the Snap RS 801 switches, including that the switches had common design defects by turning on and off repeatedly when the switches should be either in the "on" or "off" state, which condition generates heat in the SnapRS 801 switches causing them to melt, deform, and/or catch fire during normal use.

38.     Plaintiff and Class Members had no way of discerning that Defendant's representations were false and misleading, and that Defendant had made omissions because the malfunctioning SnapRS 801 switches could only be detected by solar contractors or persons with industry expertise.

39.     Plaintiff and the Class members who purchased solar energy systems equipped with the SnapRS 801 switches would not have purchased them if the defects and safety hazards of the SnapRS 801 switches had been disclosed.

40.     Plaintiff's and Class Members' solar contractors were authorized Generac dealers.

41.     Plaintiff's and Class Members' solar contractors relied on Generac's representations and/or omissions and supplied Generac PWRcell solar energy and battery storage systems equipped with SnapRS 801 switches to third-party consumers, including Plaintiff and Class Members.

42.      Plaintiff and Class Members relied on Generac's representations and/or omissions and agreed to purchase and have installed in their homes the Generac PWRcell solar energy and battery storage systems equipped with SnapRS 801 switches.

43.     Generac PWRcell solar energy and battery storage systems incorporated the SnapRS 801 switch, more fully known as the Generac SnapRS Rapid Shutdown Inline Disconnect Switch, which is a device designed to be

10

installed between each photovoltaic module ("PV module" or solar panel) allowing rapid shutdown initiated via the inverter or a remote shutdown switch.

44.     Rapid shutdown is required by the National Electrical Code (NEC) as a way to de-energize a residential solar panel system.

45.     Generac designed, manufactured, marketed, and distributed its SnapRS 801 switch as a way to satisfy rapid shutdown compliance for solar energy storage systems.

46.     To comply with the NEC's Rapid Shutdown requirements, a single SnapRS 801 switch was installed between each PV module (solar panel) to protect against lightning and other electrical surges, particularly in situations where emergency responders needed to access a roof equipped with a solar energy system where electric shock could result in serious injury, death, and/or damage to equipment and property.

47.     With a SnapRS 801 switch installed for each PV module (solar panel) on a residential solar energy system, a system with 50 PV modules (solar panels) would have 50 SnapRS 801 switches.

48.     In most cases, a homeowner's solar energy system will include "arrays" of approximately 8 solar panels, with each array connected to a PV link which conducts the electrical energy to the inverter and then supplied to the home.

49.     For homeowners with solar energy systems connected to wireless internet, the system is capable of electronically communicating information to Generac related to system output, errors, and battery status.

50.     Generac is also capable of sending software updates and other information to customers' solar energy systems that are connected to the internet.

**Generac became aware of defects and safety hazards associated with the SnapRS 801 switch as early as April 2021 and has failed to notify Plaintiff and the vast majority of Class Members.**

51.     In April 2021, a nationwide solar contractor, Power Home Solar, LLC d/b/a Pink Energy ("PHS") discovered a melted SnapRS 801 switch during a service call for customers in Cincinnati, Ohio who had complained of decreased energy production from their residential solar energy system.

52.     PHS immediately reported this issue to Generac and provided Generac with photos of the melted SnapRS 801 switches.

53.     In August 2021, another solar installer, Valley Solar, informed Generac that the SnapRS 801 switches were experiencing a high failure rate and showing signs of heat deformation and charring.

54.     Also in August 2021, a fire occurred at the home of a PHS customer in Lancaster, Kentucky which was later determined to be caused by overheating SnapRS 801 switches in that homeowner's solar energy system.

55.     On August 12, 2021, solar installer PHS and Generac participated in a conference call during which Generac informed PHS it was investigating "bulging and separation" issues associated with its SnapRS 801 switches and that it was in the process of developing and testing an updated model of the SnapRS 801 switch which Generac referred to as the 801A.

56.     On August 18, 2021, a fire occurred at the home of a PHS customer in Lexington, South Carolina where the cause of the fire was determined to be a melting and/or exploding SnapRS 801 switch.

57.     On or about August 19, 2021, Jeffrey McAndrew, Generac's Director of Sales for its East Region, informed PHS that Generac had found that SnapRS 801 switches were overactive by turning on and off repeatedly when they should have been in either the "on" or "off" state, which condition generated heat in the SnapRS 801 switches causing them to "bubble out" and that the issue had been caused by the SnapRS 801 switches "turning on and off repeatedly."

58.     Generac reassured PHS that a firmware update would remedy the issue.

59.     The firmware update could only occur for those residential solar energy systems connected to the internet.

60.     Generac knew that during the firmware update, there would be adverse effects on the overall operation and energy production of residential solar energy systems equipped with the defective SnapRS 801 switches.

61.     Despite Generac's knowledge, Generac failed to disclose to Plaintiff and Class Members any of the adverse effects the firmware update would have on the production of energy from Plaintiff's and Class Members' solar energy systems.

62.     Despite Generac's representations to PHS that the firmware update would remedy the issue, the SnapRS 801 switches continued to malfunction.

63.     PHS subsequently discovered that the cause of the decreased energy production from residential solar energy systems equipped with the SnapRS 801 switches was what the Generac inverter coded on the digital display as a "PVRSS Lockout" system error.

64.     The PVRSS Lockout was determined to be caused when a PV link or inverter detected a malfunctioning or overheating SnapRS 801 switch in an array of PV modules (solar panels).  When this occurred, the entire array of panels went into "lockout mode" and the array did not generate any energy until the lockout was cleared.

14

65.     Clearing a PVRSS Lockout required the homeowner to visually inspect the digital display on the inverter to be informed of the error and a service technician to replace the SnapRS 801 switch on the array that is in lockout mode.

66.     In the spring of 2022, due to the continued incidents involving the SnapRS 801 switches and potential safety hazards to homeowners and their property, solar installer PHS inquired of Generac as to whether a report had been filed with the Consumer Product Safety Commission ("CPSC") or other government agency, and whether a product recall had been initiated.

67.     In response, Generac represented that it had submitted a report to the CPSC, but that it did not believe any corrective action was necessary, including a product recall.

68.     On May 22, 2022, PHS requested via email a copy of the report that Generac allegedly had filed with the CPSC; Generac refused to provide that information to PHS.

69.     In June 2022, Generac acknowledged a near 50% failure rate in the SnapRS 801 switches.

70.     To date, the vast majority of Class Members remain unaware of the defects and potential safety hazards of the SnapRS 801 switches, including decreased energy production and the potential for damage to equipment and property because Generac has failed to issue a general communication to all

homeowners who had solar energy systems equipped with the SnapRS 801 switches.

71.    Generac knew that the SnapRS 801 switch was defective as early as April 2021 and continued to manufacture and market the SnapRS 801 switch, incorporating the SnapRS 801 switch as a component in their PWRcell solar energy and battery storage systems.

72.    Generac knew that the SnapRS 801 switch was defective as early as April 2021 and failed to notify Plaintiff and Class Members that the SnapRS 801 switch was defective and could impede the functioning of Plaintiff's and Class Members' residential solar energy systems and posed a significant safety hazard.

73.    Generac knew that the SnapRS 801 switch was defective as early as April 2021 and failed to timely provide replacement switches that would allow Plaintiff's and Class Members' residential solar energy systems to function properly, efficiently, and safely.

74.    Defendant's unlawful conduct described herein caused decreased energy production in Plaintiff's and the Class Members' solar energy systems resulting in higher energy bills and in some cases damage to the solar energy systems and property.  In addition, Plaintiff and Class Members have incurred costs for replacing the SnapRS 801 switches when those costs were not covered by Defendant.

75.     Therefore, Plaintiff and Class Members suffered ascertainable losses and actual damages as a direct and proximate result of Defendant's unlawful practices including 1) the costs for replacing the SnapRS 801 switches in their residential solar energy systems when those costs were not covered by Generac; 2) the costs for troubleshooting Plaintiff's and Class Members' residential solar energy systems when the defective SnapRS 801 switches caused other components to turn off or malfunction; 3) electrical bills incurred as a result of their residential solar energy systems not functioning properly and at full efficiency as a result of the SnapRS 801 switches decreasing or completely impeding energy production from Plaintiff's and Class Members' residential solar energy systems; and 4) damage to Plaintiff's and Class Members' residential solar energy systems and/or property as a result of the SnapRS 801 switches melting, deforming, and/or catching fire.

76.     Generac has refused to compensate Plaintiff and Class Members for electrical bills incurred as a result of their residential solar energy systems not functioning properly and at full efficiency when these solar energy systems, if performing properly, would have generated energy for most, if not all, the Plaintiff's and Class Members' home energy needs.

77.     Generac has refused to compensate Plaintiff and Class Members for such electric bills because, according to Generac, a consumer's electric bills

17

arising from decreased energy production caused by malfunctioning Generac SnapRS 801 switches is not covered by the warranty.

## TOLLING OF THE STATUTE OF LIMITATIONS

### Discovery Rule Tolling

78.     Plaintiff and Class Members could not have discovered through reasonable diligence that their Generac SnapRS 801 switches were defective within the time period of any applicable statutes of limitation.

79.     Therefore, Plaintiff's claims and the claims of all Class Members did not accrue until they discovered that the SnapRS 801 switches impeded energy production from their residential solar energy systems and/or damage to equipment and/or property.

### Fraudulent Concealment Tolling

80.     Throughout the time period relevant to this action, Generac concealed and failed to disclose to Plaintiff and Class Members vital information about the defects and safety hazards associated with the SnapRS 801 switch.  Generac kept Plaintiff and Class Members ignorant of vital information essential to the pursuit of their claims, and as a result, neither Plaintiff nor the other Class Members could have discovered the defects and safety hazards, even upon reasonable exercise of diligence.

81.     Prior to the date of this Complaint, Generac knew of the defects and safety hazards of the SnapRS 801 switch, but continued to manufacture, market, distribute, and/or sell the SnapRS 801 switches to Plaintiff and Class Members.  In doing so, Generac concealed from or failed to notify Plaintiff and Class Members about the defects and safety hazards of the SnapRS 801 switch.

82.     Plaintiff and Class Members justifiably relied on Generac to disclose these material defects in SnapRS 801 switches which they purchased as part of their residential solar energy systems, as such defects were hidden and not discoverable through reasonable efforts by Plaintiff and Class Members.

83.     Thus, the running of all applicable statutes of limitation have been tolled and suspended with respect to any claims that the Plaintiff and the other Class Members have sustained as a result of the SnapRS 801's defects and safety hazards by virtue of the fraudulent concealment doctrine.

**Estoppel**

84.     Generac was under a continuous duty to disclose to Plaintiff and the other Class Members the existence of the defects and safety hazards of the SnapRS 801 switch, which substantially affects the functionality, efficiency and safety of their residential solar energy systems.

85.     Generac actively concealed the defects and safety hazards of the SnapRS 801 switch, along with the resulting adverse effects of those defects and

19

safety hazards on the Plaintiff's and Class Members' residential solar energy systems and property.

86. Plaintiff and Class Members reasonably relied upon Generac knowing and actively concealing these material facts.

87. Generac is accordingly estopped from relying on any statute of limitations in defense of this action.

## CLASS ACTION ALLEGATIONS

88. Pursuant to Fed. R. Civ. P. 23, Plaintiff brings this action on behalf of himself and on behalf of a Nationwide Class, defined as:

### Nationwide Class

> All persons and entities within the United States (including its Territories and the District of Columbia) that purchased and had installed a residential solar energy system equipped with Generac SnapRS Rapid Shutdown Inline Disconnect switches (the SnapRS 801 switch).

89. In the alternative to the Nationwide Class, and pursuant to Federal Rules of Civil Procedure Rule 23(5), Plaintiff seeks to represent the following State Class as well as any subclasses or issue classes as Plaintiff may propose and/or the Court may designate at the time of class certification:

### Florida Class

> All persons and entities within the State of Florida that purchased and had installed a residential solar energy system equipped with Generac SnapRS Rapid Shutdown Inline Disconnect switches (the SnapRS 801 switch).

20

90.     Excluded from all classes are Generac, as well as Generac's employees, affiliates, officers, and directors, including franchised dealers, any individuals who experienced physical injury as a result of the defect at issue in this litigation, and the judge and court staff to whom this case is assigned.

91.     Plaintiff reserves the right to modify and/or add to the Nationwide and/or State Class prior to class certification.

**Fed. R. Civ. P. 23(a) Prerequisites**

92.     **Numerosity.**  Both the Nationwide and State Class are so numerous that joinder of all members is impracticable.  Although the precise number of Class Members is unknown and is within the exclusive control of Generac and its authorized dealers, Generac has sold hundreds of thousands of SnapRS 801 switches in the United States, including tens of thousands in the State of Florida.

93.     **Commonality.**  The Claims of Plaintiff and the Nationwide Class and State Class involve common questions of fact and law that will predominate over any individual issues. These common questions include, but are not limited to:

        a.      Whether the SnapRS 801 switches that Generac designed, manufactured, marketed, distributed, and/or sold contained a defect that caused abnormal shutdown of energy production from PV modules (solar panels) and/or arrays of PV modules;

21

b.      Whether the SnapRS 801 switches that Generac designed, manufactured, marketed, distributed, and/or sold contained a defect that caused the switches to melt,  deform, and/or catch fire;

c.      Whether Generac knew or should have known of these defects in the SnapRS 801 switches at the time of designing, marketing, distributing, and/or selling the SnapRS 801 switches;

d.      Whether Generac knew or should have known that its representations regarding the functioning, efficiency and safety of its PWRcell solar energy and battery storage systems, which included the SnapRS 801 switches as components, were false at the time of designing, marketing, distributing, and/or selling the SnapRS 801 switches;

e.      Whether the defects and safety hazards of the SnapRS 801 switches constitute material facts that reasonable consumers would have considered in deciding whether to purchase Generac PWRcell solar energy and battery storage systems equipped with the SnapRS 801 switches;

f.      Whether Generac's conduct violates consumer protection statutes and other laws as asserted herein;

g.      Whether Generac had a duty to disclose the defects and safety hazards of the SnapRS 801 switches to Plaintiff and the other Class Members;

22

h. Whether Generac omitted, actively concealed, and/or failed to disclose material facts about the SnapRS 801 switches;

i. Whether concealment of the defects and safety hazards of the SnapRS 801 switches would have induced reasonable consumers to act to their detriment by purchasing solar energy systems equipped with the SnapRS 801 switches;

j. Whether Plaintiff and the other Class Members are entitled to equitable relief, including, but not limited to, restitution and injunctive relief; and

k. Whether Plaintiff and the other Class Members are entitled to damages and other monetary relief and, if so, in what amount.

**Typicality.**  Plaintiff's claims are typical of Nationwide Class and State Class Members' claims.  As described herein, Plaintiff and the other Class Members purchased SnapRS 801 switches as part of their Generac PWRcell solar energy and battery storage systems and these SnapRS 801 switches were designed, manufactured, marketed, distributed,  and/or sold by Generac.

94. Plaintiff and the other Class Members have been damaged by Generac's misconduct.  Plaintiff and the other Class Members have incurred similar or identical losses related to the SnapRS 801 switches.  Furthermore, the

factual bases of Generac's misconduct are common to all Class Members and represent a common thread of misconduct resulting in injury to all Class Members.

95.     **Adequacy.**  Plaintiff will fully and adequately represent and protect the interests of the Nationwide Class and State Class because they share common interests with Class Members as a result of Generac's misconduct.

96.     Plaintiff has retained counsel with experience in complex, commercial, multiparty, mass tort, consumer, and class action litigation.  Plaintiff's counsel have prosecuted dozens of complex class actions, including those involving defective products, in state and federal courts across the country.

97.     Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the Classes and have the financial resources to do so.  Neither Plaintiff nor his counsel have interests adverse to those of the Classes.

**Fed. R. Civ. P. 23(b) Prerequisites**

98.     **Predominance.**  Questions of law and fact common to the Nationwide and State Class, including those listed above, predominate over questions affecting individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy. Individual damages on the matter can be readily calculated.  Thus, the question of individual damages will not predominate over legal and factual questions common to the Nationwide Class and State Class.  Additionally, Generac has acted

24

or refused to act on grounds that apply generally to the Nationwide Class and State Class, so that final injunctive relief and/or corresponding declaratory relief is appropriate with respect to the Nationwide Class and State Class.

99. **Superiority.** Generac's scheme treated consumers as a Class to be uniformly deceived. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Plaintiff and Class Members have all suffered and will continue to suffer economic harm and damage as a result of Generac's wrongful conduct, which was directed toward Class Members and the public as a whole, rather than specifically or uniquely against any individual Class Members. Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law. Because of the relatively small size of the individual Class Members' claims, it is likely that only a few Class Members could afford to seek legal redress for Generac's misconduct. Absent a class action, Class Members will continue to incur damages, and Generac's misconduct will continue without effective remedy.

100. **Declaratory and Injunctive Relief.** Class wide declaratory, equitable, and injunctive relief is appropriate under Rule 23(b)(1) and/or (b)(2) because Generac has acted on grounds that apply generally to the Class, and inconsistent adjudications with respect to Generac's liability would establish

25

incompatible standards and substantially impair or impede the ability of Class members to protect their interests.  Class wide relief and Court supervision under Rule 23 assures fair, consistent, and equitable treatment and protection of all Class Members, and uniformity and consistency in Generac's discharge of its duties to perform corrective action regarding the defective SnapRS 801 switches.

## CAUSES OF ACTION

### COUNT I
**(Violation of Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.* on behalf of the Nationwide Class)**

101.   Plaintiff incorporates by reference all material facts in this Complaint as though fully set forth herein.

102.   Plaintiff brings this Count on behalf of himself and the Nationwide Class.

103.   This Court has jurisdiction to decide claims brought under the Magnuson-Moss Warranty Act (for the purpose of this Count, the "Act") by virtue of 28 U.S.C. § 1332(a)-(d).

104.   Defendant is a "supplier" and "warrantor" within the meaning of 15 U.S.C. § 2301(4) and (5).

105.   Plaintiff and the other Class Members are "consumers" who purchased "consumer products" for purposes of 15 U.S.C. § 2301(1) and (3)

because they purchased the SnapRS 801 switches for personal, family, or household purposes.

106.   The SnapRS 801 switches are "consumer products" within the meaning of the Act.  15 U.S.C. § 2301(1).

107.   The Act provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty. 15 U.S.C. § 2310(d)(1).

108.   The amount in controversy of the Plaintiff's and Class Members' individual claims meets or exceeds $25.00 in value.  In addition, the amount in controversy meets or exceeds $50,000 in value (exclusive of interest and costs) on the basis of all claims to be determined in this suit.

109.   Under the Act, damaged "consumers" have a private cause of action against any warrantor that fails to comply with a written or implied warranty.

110.   The terms of written warranties and implied warranty became part of the basis of the bargain between Plaintiff and all other Class Members when deciding to purchase a a solar energy and battery storage system equipped with the SnapRS 801 switches.

111.   Defendant breached these written and implied warranties as described in detail above.

112.    The SnapRS 801 switches share common design defects by turning on and off repeatedly when the switches should be either in the "on" or "off" state, which condition generates heat in the SnapRS 801 switches causing them to melt, deform, and/or catch fire during normal use.

113.    Defendant has refused to compensate Plaintiff and Class Members for electric bills arising from decreased energy production from their solar energy systems caused by malfunctioning SnapRS 801 switches because, according to Defendant, these bills arising from malfunctioning SnapRS 801 switches are not covered by the warranty.

114.    Plaintiff and each of the other Nationwide Class Members have had sufficient direct dealings with either Defendant or its agents (including Generac authorized dealers or solar contractors—the companies that installed their residential solar energy systems) to establish privity of contract between Defendant, on the one hand, and Plaintiff and each of the other Nationwide Class Members, on the other hand.  Nonetheless, privity is not required here because Plaintiff and each of the other Nationwide Class members are intended third-party beneficiaries of contracts between Defendant and its authorized dealers, and specifically, of Defendant's implied warranties. The authorized dealers (solar contractors) were not intended to be the ultimate consumers of the SnapRS 801 switches and have no rights under the warranty agreements provided with the

PWRcell solar energy and battery storage systems which included the SnapRS 801 switches; the warranty agreements were designed for and intended to benefit the consumers only.

115.   Affording Defendant a reasonable opportunity to cure its breach of written warranties would be unnecessary and futile here.  At the time of sale of each PWRcell solar energy and battery storage system equipped with the SnapRS 801 switches after April 2021 and possibly before, Defendant knew, should have known, or was reckless in, not knowing of its misrepresentations and omissions concerning the SnapRS 801 switches to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defects and safety hazards. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement for Plaintiff to resort to an informal dispute resolution procedure and/or afford Defendant a reasonable opportunity to cure its breach of warranties is excused and thereby deemed satisfied.

116.   As a direct and proximate result of Defendant's breach of the written warranties and the implied warranty of merchantability, Plaintiff and Class Members have suffered damages in an amount to be determined at trial.

117.   Plaintiff, individually and on behalf of the Nationwide Class, seeks all damages permitted by law, including compensation for 1) the costs for replacing the SnapRS 801 switches in their residential solar energy systems when those costs

were not covered by Generac; 2) the costs for troubleshooting Plaintiff's and Class Members' residential solar energy systems when the defective SnapRS 801 switches caused other components to turn off or malfunction; 3) electrical bills incurred as a result of their residential solar energy systems not functioning properly and at full efficiency as a result of the SnapRS 801 switches decreasing or completely impeding energy production from Plaintiff's and Class Members' residential solar energy systems; and 4) damage to Plaintiff's and Class Members' residential solar energy systems and/or property as a result of the SnapRS 801 switches melting, deforming, and/or catching fire, along with all other incidental and consequential damages, statutory attorney fees, and all other relief allowed by law.

118.   Plaintiff and the Nationwide Class seek compensatory damages, court costs and attorneys' fees and any other just and proper relief available under the Act.

## COUNT II
**(Fraudulent Concealment on behalf of the Nationwide Class or, in the alternative, the Subclass)**

119.   Plaintiff incorporates by reference all material facts in this Complaint as though fully set forth herein.

120.   Plaintiff brings this Count on behalf of himself and the Nationwide Class or, in the alternative, on behalf of the Subclass.

121.   As alleged above, Defendant concealed or failed to disclose material facts concerning the defects and safety hazards of the SnapRS 801 switches in order to defraud and mislead Plaintiff and Class Members about the ability to function and safety of the SnapRS 801 switches.

122.   Defendant failed to disclose to Plaintiff and Class Members that SnapRS 801 switches had common design defects by turning on and off repeatedly when the switches should be either in the "on" or "off" state, which condition generates heat in the SnapRS 801 switches causing them to melt, deform, and/or catch fire during normal use.

123.   Defendant knew that these material facts regarding the functioning and safety of the SnapRS 801 switches should be disclosed.

124.   Defendant knew its concealment or failure to disclose these material facts would induce Plaintiff and Class Members to act by purchasing—through solar contractors—Generac's PWRcell solar energy and battery storage systems equipped with SnapRS 801 switches.  Defendant had a duty to disclose these material facts before Plaintiff's and Class Members purchased their solar energy systems.

125.   Once Plaintiff and Class Members had solar energy systems equipped with SnapRS 801 switches installed on their homes and Defendant found out that

the switches malfunctioned, Defendant failed to notify Plaintiff and Class

Members of the defects and safety hazards of the SnapRS 801 switches.

126.   Defendant again had a duty to disclose these material facts.

127.   Defendant's concealment or failure to disclose the design defects

common to SnapRS 801 switches was material to consumers because the SnapRS

801 switches affected the ability to function and safety of Plaintiff's and Class

Members' solar energy systems.

128.   Plaintiff and Class Members detrimentally relied on Defendant's

fraudulent concealment, and Defendant intended for this reliance.  Plaintiff and

Class members had no way of discerning that Defendant was, in fact, deceiving

them because the SnapRS 801 switches were sophisticated technology and the

defects therein could only be discerned by solar contractors after significant

troubleshooting, and not consumers.

129.   Defendant's plan to market and sell their defective SnapRS 801

switches and then fraudulently concealing the defects and safety hazards reveals a

corporate culture that emphasized sales and profits over integrity and public safety.

130.   As a direct and proximate result of Defendant's fraudulent

concealment, Plaintiff and Class Members sustained damages:  the SnapRS 801

switches have caused decreased energy production and are subject to safety

hazards including deforming, melting and/or catching fire that can damage their solar energy systems and property.

131.   Plaintiff demands judgment against Defendant and requests compensatory damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

132.   Plaintiff reserves the right to seek punitive damages in the future after engaging in discovery.

## COUNT III
**(Common-Law Fraud on behalf of the Nationwide Class or, in the alternative, the Subclass)**

133.   Plaintiff incorporates by reference all material facts in this Complaint as though fully set forth herein.

134.   Plaintiff brings this Count on behalf of himself and the Nationwide Class or, in the alternative, on behalf of the Subclass.

135.   As alleged above, Defendant made false statements of fact to solar contractors and the public that Defendant's PWRcell solar energy and battery storage systems equipped with the SnapRS 801 switches were fit for their intended purpose and were of marketable quality.

136.   Defendant knew that the statements were false at the time they were made.

137.   Defendant made the false statements for the purpose of inducing Plaintiffs and Class Members to purchase—through solar contractors—Defendant's PWRcell solar energy and battery storage systems equipped with SnapRS 801 switches.

138.   Plaintiff and Class Members acted in reliance thereon and purchased Defendant's PWRcell solar energy and battery storage systems equipped with SnapRS 801 switches.

139.   As a direct and proximate result of Defendant's fraud, Plaintiff and Class Members sustained damages.  The SnapRS 801 switches have caused decreased energy production in Plaintiff's and Class Member's solar energy systems and are subject to safety hazards including deforming and melting that can damage their solar energy systems and property.

140.   Plaintiff demands judgment against Defendant and requests compensatory damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

141.   Plaintiff reserves the right to seek punitive damages in the future after engaging in discovery.

## COUNT IV
**(Fraudulent Misrepresentation on behalf of the Nationwide Class or, in the alternative, the Subclass)**

34

142.   Plaintiff incorporates by reference all material facts in this Complaint as though fully set forth herein.

143.   Plaintiff brings this Count on behalf of himself and the Nationwide Class or, in the alternative, on behalf of the Subclass.

144.   As alleged above, Defendant made false statements of material fact to solar contractors and the public that Defendant's PWRcell solar energy and battery storage systems equipped with the SnapRS 801 switches were fit for their intended purpose and were of marketable quality.

145.   Defendant knew that the statements were false at the time they were made.

146.   Defendant made the false statements for the purpose of inducing Plaintiffs and Class Members to purchase—through solar contractors— Defendant's PWRcell solar energy and battery storage systems equipped with SnapRS 801 switches.

147.   As a direct and proximate result of Defendant's fraud, Plaintiff and Class Members sustained damages.  The SnapRS 801 switches have caused decreased energy production in Plaintiff's and Class Member's solar energy systems and are subject to safety hazards including deforming, melting and/or catching fire that can damage their solar energy systems and property.

148.   Plaintiff demands judgment against Defendant and requests compensatory damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

149.   Plaintiff reserves the right to seek punitive damages in the future after engaging in discovery.

## COUNT V
**(Negligent Misrepresentation on behalf of the Nationwide Class or, in the alternative, the Subclass)**

150.   Plaintiff incorporates by reference all material facts in this Complaint as though fully set forth herein.

151.   Plaintiff brings this Count on behalf of himself and the Nationwide Class or, in the alternative, on behalf of the Subclass.

152.   In the alternative to the facts supporting a claim of common-law fraud and fraudulent misrepresentation, Defendant made material facts that Defendant believed to be true about the ability to function and safety of the SnapRS 801 switches.

153.   Defendant was negligent in making false statements to solar contractors and the public that Generac's PWRcell solar energy and battery storage systems equipped with the SnapRS 801 switches were fit for their intended purpose and were of marketable quality.

154.   Defendant should have known that the statements were false.

36

155.   Defendant intended to induce Plaintiff and Class Members to rely on the misrepresentations and omissions by purchasing PWRcell solar energy and battery storage systems equipped with the SnapRS 801 switches.

156.   Plaintiff and Class Members acted in justifiable reliance on the misrepresentations and omissions.  As a direct and proximate result of Defendant's negligent misrepresentations and omissions, Plaintiff and Class Members sustained damages:  the SnapRS 801 switches have caused decreased energy production from Plaintiff's and Class Members' solar energy systems and the switches are subject to safety hazards including deforming, melting and/or catching fire that can damage their solar energy systems and property.

157.   Plaintiff and Class Members have paid for 1) the costs for replacing the SnapRS 801 switches in their residential solar energy systems when those costs were not covered by Generac; 2) the costs for troubleshooting Plaintiff's and Class Members' residential solar energy systems when the defective SnapRS 801 switches caused other components to turn off or malfunction; 3) electrical bills incurred as a result of their residential solar energy systems not functioning properly and at full efficiency as a result of the SnapRS 801 switches decreasing or completely impeding energy production from Plaintiff's and Class Members' residential solar energy systems; and 4) damage to Plaintiff's and Class Members'

residential solar energy systems and/or property as a result of the SnapRS 801 switches melting, deforming, and/or catching fire.

158.    Plaintiff demands judgment against Defendant and requests compensatory damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

159.    Plaintiff reserves the right to seek punitive damages in the future after engaging in discovery.

## COUNT VI
### (Unjust Enrichment on behalf of the Nationwide Class or, in the alternative, the Subclass)

160.    Plaintiff incorporates by reference all material facts in this Complaint as though fully set forth herein.

161.    Plaintiff brings this Count on behalf of himself and the Nationwide Class or, in the alternative, on behalf of the Subclass.

162.    Plaintiff and Class Members conferred a benefit on Defendant by purchasing—through solar contractors—Generac's PWRcell solar energy and battery storage systems equipped with SnapRS 801 switches.

163.    Defendant voluntarily accepted and retained the benefit conferred by Plaintiff and Class Members in the form of profits from selling its PWRcell solar energy and battery storage systems equipped with SnapRS 801 switches.

164. The benefits that Defendant received and retained are unjust, and inequity has resulted.

165. Defendant knowingly accepted the unjust benefits of its misconduct.

166. It is inequitable and unconscionable for Defendant to retain those unjust benefits without paying value to Plaintiff and the Class Members.

167. As a result of Defendant's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiff and the other Class Members, in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this case be certified and maintained as a class action pursuant to one or more of the proposed Classes, as they may be modified or amended, and respectfully requests this Court:

A. Determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying one or more Classes as defined above;

B. Appoint Plaintiff as the representative of the Classes and his counsel as Class counsel;

C. Award damages, including compensatory and exemplary damages, to Plaintiff and all other Class Members;

D. Award Plaintiffs and Class Members actual damages sustained;

E.      Award Plaintiff and Class Members such additional damages, over and above the amount of their actual damages, which are authorized and warranted by law;

F.      Grant restitution to Plaintiffs and Class members and require Defendant to disgorge inequitable gains;

G.      Grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Defendant to recall and/or replace the SnapRS 801 switches, or, at a minimum, to provide Plaintiff and Class members with appropriate curative notice regarding the existence and cause of the defect;

H.      Award Plaintiff and Class members punitive damages if discovery merits such an award;

I.      Award Plaintiff and Class members their reasonable attorneys' fees and reimbursement of all costs for the prosecution of this action; and

J.      Award such other relief as this Court deems just and appropriate.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated:  October 28, 2022

By:     */s/ Matthew L. Baldwin*
        Matthew L. Baldwin

40

Fla. Bar. No.: 27463

VARGAS GONZALEZ
BALDWIN DELOMBARD, LLP
2745 W Fairbanks Avenue
First Floor
Winter Park, FL 32789
Phone: (407) 603-7940
Fax: (407) 603-7943

James Jonathan Rosemergy, Esq.
(Mo. Bar No. 50166), *pending admission Pro Hac Vice*
jrosemergy@careydanis.com
CAREY, DANIS & LOWE
8235 Forsyth, Suite 1100
St. Louis, MO 63105
Ph: 314-725-7700
Fax: 314-721-0905

Jacob Alex Flint (Mo. Bar No. 70640), *pending admission Pro Hac Vice*
jacob@jacobflintlaw.com
JACOB FLINT LAW
2 CityPlace Dr. #200
St. Louis, MO 63141
phone:  314-677-7613

*Attorneys for Plaintiff and the Class*

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned hereby, certify that on October 28, 2022 I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the CM/ECF participants registered to receive service.

By:   */s/ Matthew L. Baldwin*
**Matthew L. Baldwin**
Fla. Bar No.: 27463

**VARGAS GONZALEZ
BALDWIN DELOMBARD, LLP**
2745 West Fairbanks Avenue
First Floor
Winter Park, FL 32789
E-mail: Matthew@VargasGonzalez.com

Service e-mail:
Service8@VargasGonzalez.com