# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

DANIEL HAAK, individually and on
behalf of all others similarly situated,

    Plaintiff,

    v.

Generac Power Systems, Inc.,

    Defendant.

Civil Action No. 8:22-CV-02470

## DEFENDANT GENERAC POWER SYSTEMS, INC.'S
## MOTION TO DISMISS COMPLAINT

Defendant Generac Power Systems, Inc. ("Generac") respectfully requests that this Court dismiss named plaintiff Daniel Haak's Complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) and for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).

Plaintiff asserts causes of action for violation of the Magnusson Moss Warranty Act ("MMWA"; Count I), fraudulent concealment (Count II), common-law fraud (Count III), fraudulent misrepresentation (Count IV), negligent misrepresentation (Count V), and unjust enrichment (Count VI). Plaintiff's MMWA class action claim (Count I) should be dismissed in its entirety because Plaintiff does not meet the federal jurisdictional requirement of naming 100 plaintiffs. Further, Count I should be dismissed to the extent it is premised on an implied warranty because Plaintiff does

not allege privity with Generac as required by Florida law. Plaintiff's fraud-based claims (Counts II-V) must be dismissed because Plaintiff's uniformly conclusory allegations fall far short of the required particularity with which fraud must be pleaded, and all four counts also fail for Plaintiff's lack of reliance and are barred by Florida's economic loss rule. Count II must also be dismissed for the independent reason that Plaintiff has not alleged (and cannot allege) Generac owed him any duty. Finally, Count VI fails to state a claim both because the allegations supporting it lack the required particularity, and because an express warranty governs Plaintiff's claims.

None of these defects can be remedied, and this Court should therefore dismiss all claims against Generac with prejudice.

## BACKGROUND[1]

Generac is an energy technology company that provides both prime and backup power systems, along with clean energy products including solar energy and battery storage solutions. Compl. ¶¶ 33-34. Among its clean energy products is the PWRcell solar and battery storage system for residential use. The PWRcell system connects to rooftop solar panel arrays to convert electricity generated by the panels for home use. The system can include an inverter, a photovoltaic link substring optimizer, a battery cabinet, and a rapid shutdown device known as the SnapRS. *Id.* ¶ 34. One SnapRS device connects to each photovoltaic module ("PV module" or solar panel), making it

---

[1] For purposes of this motion only, Generac takes Plaintiff's allegations as true, while conceding none.

possible to shut down power to those modules rapidly if needed to reduce output voltage to a safe level, as required by the National Electrical Code. *Id.* ¶¶ 43-46.

The named plaintiff ("Plaintiff" or "Haak") is a resident of Polk County, Florida. *Id.* ¶ 12. In July 2020, Haak contracted with an unnamed third party—not Generac—to install a solar energy system at his home, which included 56 solar panels and 56 Generac SnapRS model 801 devices ("SnapRS 801s"). *Id.* ¶ 13. After an unknown time, some of the SnapRS 801s allegedly "malfunctioned," and were allegedly replaced by an unknown party with 56 SnapRS model 801A devices. *Id.* ¶¶ 16-17. An unnamed person or entity allegedly determined during replacement that several of the SnapRS 801s had "deformed, melted and/or had caught fire" and one of Plaintiff's two inverters "was damaged and had emitted smoke." *Id.* ¶¶ 18-19. Again following an unknown interval, an unknown party allegedly determined that the SnapRS 801A devices had "malfunctioned" and they were purportedly replaced with SnapRS 802 devices. *Id.* ¶¶ 20-21. Plaintiff purportedly paid more than $7,000 to his electrical service provider for energy he claims would have been produced by his home solar energy system "had the SnapRS 801 switches functioned properly." *Id.* ¶ 24.

Haak filed this putative class action on October 28, 2022, purporting to represent a nationwide class of all U.S. persons and entities that purchased and had installed a residential solar energy system equipped with Generac SnapRS 801s, or, in the alternative, a similarly defined putative class limited to the State of Florida. *Id.* ¶¶ 88-89. Plaintiff claims that Generac made unspecified representations to Plaintiff and putative class members at unknown times, in unknown places, and through unknown

media, that its PWRcell products were fit for the purpose for which they were intended. *Id.* ¶ 36. Plaintiff also alleges that Generac concealed facts concerning the SnapRS 801s, including that they suffered a design defect causing them to turn on and off repeatedly and thereby generate heat leading them to "melt, deform, and/or catch fire during normal use." *Id.* ¶ 37. According to the Complaint, Generac "became aware of defects and safety hazards associated with the SnapRS 801 switch as early as April 2021." *Id.*, unnumbered title between ¶¶ 50 and 51. A large solar energy system installer, Power Home Solar, LLC ("PHS") allegedly informed Generac about a "melted SnapRS 801" in April 2021, and in August 2021 Generac allegedly discussed its investigation of issues associated with the SnapRS 801s in communications with PHS and another installer. *Id.* ¶¶ 51-53, 55, 57.

For the reasons below, Plaintiff's allegations are woefully insufficient to support even a single claim, and this Court should dismiss the Complaint in its entirety.[2]

---

[2] Plaintiff does not identify what law should govern his claims. Because Plaintiff has invoked this Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332(d), this Court should employ Florida's conflict-of-laws principles to select the law applicable to Plaintiff's claims. *See, e.g., Arndt v. Twenty-One Eighty-Five, LLC*, 448 F. Supp. 3d 1310, 1315 (S.D. Fla. 2020). Florida applies the "*lex loci contractus*" rule to contract-based claims, including quasi-contract, and would select Florida law for the MMWA and unjust enrichment claims: *David v. Am. Suzuki Motor Corp.*, 629 F. Supp. 2d 1309, 1316 (S.D. Fla. 2009) (selecting Florida law for MMWA and unjust enrichment claims where named plaintiff purchased the product in Florida). Florida employs the "most significant relationship" test of the Restatement (Second) of Conflict of Laws to fraud and other tort claims. *Doe v. Roe*, 2022 WL 1447378, at *2 (11th Cir. May 9, 2022). However, the court will apply that test only if a true conflict exists between potentially applicable laws, and will select Florida law if no such conflict exists. *Universal Physician Servs., LLC v. Del Zotto*, 2019 WL 6033062, at *2-*3 (M.D. Fla. Nov. 14, 2019). Because the elements of the tort causes of action in Counts II-V are the same in Florida and Wisconsin, the only other state with a potentially significant relationship to this case, and because Wisconsin law also employs the economic loss doctrine to bar fraud claims based on allegedly defective products, there is no conflict between the states' laws and the Court should select Florida law to govern this dispute. *See Hinrichs v. Dow Chem. Co.*, 937 N.W.2d 37, 46-49 (Wis. 2020) (applying economic loss doctrine to misrepresentation claims in products liability context).

**ARGUMENT**

**I.    The Magnuson Moss Warranty Act Claim Must Be Dismissed.**

Haak's claim for violation of the MMWA on behalf of a nationwide class must be dismissed because, first, the Complaint does not meet the MMWA's plain requirement to have 100 named plaintiffs to bring a class action in federal court, requiring dismissal of Count I. Second, Haak fails to allege an implied warranty claim predicate for his MMWA claim under Florida law because he cannot establish the required privity with Generac. His claim therefore fails to the extent it is based on an implied warranty.

A.    *The MMWA Claim Does Not Meet the 100 Named Plaintiffs Requirement.*

The MMWA provides that "no claim shall be cognizable" in a suit brought in a district court of the United States pursuant to the MMWA's consumer civil action provision, "if the action is brought as a class action, and the number of named plaintiffs is less than one hundred." 15 U.S.C. § 2310(d)(1)(B), (3)(C); *see also Boddison v. Gen. Motors LLC*, 2021 WL 2435388, at *9 (M.D. Fla. Mar. 19, 2021) (granting motion to dismiss MMWA claims for failure to meet numerosity requirement). There must therefore be 100 named plaintiffs, regardless of whether a plaintiff also alleges jurisdiction under the Class Action Fairness Act. *Floyd v. Am. Honda Motor Co.*, 966 F.3d 1027, 1032-35 (9th Cir. 2020) (upholding dismissal and rejecting "circumvention of the specific numerosity requirements of the MMWA" using CAFA); *Jackson v. Anheuser-Busch InBev SA/NV*, 2021 WL 3666312, at *19 (S.D. Fla. Aug. 18, 2021) (dismissing claims where plaintiffs failed to meet 100 named plaintiff requirement and

rejecting argument that CAFA provided jurisdiction over MMWA claims); *Lewis v. Mercedes-Benz USA, LLC*, 530 F. Supp. 3d 1183, 1206-1207 (S.D. Fla. 2021) (same). The Complaint has only one named plaintiff, requiring dismissal of the MMWA claim in Count I.[3]

Haak alleges the Court has subject matter jurisdiction under CAFA and *supplemental* jurisdiction over both the state claims and the MMWA claim, while also separately asserting that this Court has jurisdiction over his MMWA claim "by virtue of 28 U.S.C. § 1332(a)-(d)." Compl. ¶¶ 28-29, 103. To the extent he seeks to evade the express requirements for a "cognizable" class action in federal court by claiming diversity jurisdiction over *other* claims and asking the Court to consider his putative nationwide class action through supplemental jurisdiction, this Court should follow the *Borchardt* court in ruling that the 100 named plaintiff "specific statutory limitation cannot be avoided" by asserting supplemental jurisdiction, even where "the requirements for original diversity jurisdiction . . . are also satisfied." *Borchardt v. Mako Marine Int'l, Inc.*, 2011 WL 4636799, *2 (S.D. Fla. Oct. 6, 2011) (rejecting effort to avoid numerosity requirement by asserting supplemental jurisdiction over putative state law class claims where jurisdiction was based on individual MMWA claim). Supplemental jurisdiction is available under Section 1367 where the statutory

---

[3] Any attempt to bring a MMWA claim on an individual basis must fail. *See Lewis*, 530 F.Supp.3d at 1206-1207 (dismissing individual MMWA claim where suit was a class action and there were less than 100 named plaintiffs). Plaintiff also does not allege that he can meet on his own the MMWA's $50,000 amount-in-controversy requirement for cases in federal court. 15 U.S.C. § 2310(d)(1)(B), (3)(C) (claim "not cognizable" in suit brought under Section 2310(d)(1)(B) where "amount in controversy is less than the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit"); *see* Compl. ¶ 108 (MMWA amount in controversy allegations).

requirements are met unless "expressly provided otherwise by Federal statute." 28 U.S.C. § 1367(a). MMWA's clear requirement that a federal class action have at least 100 named plaintiffs is just such an express provision. *Borchardt*, 2011 WL 4636799, at *2; *see also Hatfield v. Oak Hill Banks*, 115 F. Supp. 2d 893, 897 (S.D. Ohio 2000) (rejecting supplemental jurisdiction over state law class claims and noting that MMWA "expressly provides that class actions with named plaintiffs numbering fewer than one hundred are not cognizable in district courts of the United States.").

Moreover, even if Plaintiff could technically meet the requirements for supplemental jurisdiction (which he does not), this Court should decline pursuant to 28 U.S.C. § 1367(c)(4) to exercise its discretionary jurisdiction because his efforts to avoid the plain-language requirements of the MMWA are the kind of "exceptional circumstance[]" that provides "compelling reasons" to decline jurisdiction. *See Borchardt*, 2011 WL 4636799, at *3; *see also Hatfield*, 115 F. Supp. 2d at 898 (finding the 100-plaintiff "jurisdictional bar" to be an "exceptional circumstance," and "Plaintiffs' attempt to subvert the will of Congress and this express prerequisite by laundering their purported class through § 1367 and Rule 23 is a sufficiently 'compelling reason' to decline supplemental jurisdiction.").

Finally, because Haak's other claims all fail, as discussed below, this Court should decline to exercise supplemental jurisdiction over Count I. 28 U.S.C. § 1367(c)(3).

B.   *Haak Fails to Allege Privity, as Required to State an Underlying Implied Warranty Cause of Action Under Florida Law.*

Haak does not state an implied breach of warranty claim under Florida law that could serve as a basis for his MMWA claim. The MMWA cause of action is predicated on underlying claims governed by state law.   *See Brown v. Electrolux Home Prods., Inc.*, 817 F.3d 1225, 1231 (11th Cir. 2016) (citing *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1012 (D.C. Cir. 1986); *see also Walsh*, 807 F.2d at 1012 ("except in the specific instances in which Magnuson-Moss expressly prescribes a regulating rule, the Act calls for the application of state written and implied warranty law, not the creation of additional federal law."). Indeed, the MMWA expressly defines an "implied warranty" under the MMWA as "an implied warranty arising under State law . . ." 15 U.S.C. § 2301(7). Thus, for Plaintiff (a Florida resident who made a purchase for his Florida home from a dealer or contractor located in Florida) to assert a MMWA claim based on breach of an implied warranty, he must sufficiently allege a breach of implied warranty under Florida law. Compl. ¶¶ 12, 13, 32; *Am. Suzuki Motor Corp.*, 629 F. Supp. 2d at 1316 (selecting Florida law on MMWA claim under similar circumstances).

It is well established that "[u]nder Florida law, a plaintiff cannot recover economic losses for breach of implied warranty in the absence of privity." *Mesa v. BMW of N. Am., LLC*, 904 So. 2d 450, 458 (Fla. 3d DCA 2005); *see also, e.g., Bailey v. Monaco Coach Corp.*, 168 F. App'x 893, 894 n.1 (11th Cir. 2006) ("Under Florida law, privity of contract is an essential element of a claim for breach of implied warranty");

*Kramer v. Piper Aircraft Corp.*, 520 So. 2d 37, 39 (Fla. 1988) (no claim under Florida law for breach of implied warranty where there was an absence of privity).

Haak's own allegations show that he purchased his solar energy system from a third party, and is therefore not in privity with Generac. The Complaint alleges he purchased his system from one of the unnamed "Generac authorized dealers and solar system installers located in this District" (Compl. ¶ 32), not Generac. Because "[a] plaintiff who purchases a product, but does not buy it directly from the defendant, is not in privity with that defendant," Plaintiff lacks privity and cannot state an implied warranty claim. *T.W.M. Am. Med. Sys., Inc.*, 886 F. Supp. 842, 844 (N.D. Fla. 1995); *see also, e.g.*, *Bailey*, 168 F. App'x at 894 n.1 (no privity between plaintiff and defendant where plaintiff purchased from a dealer and not the defendant manufacturer); *Kuhlman v. Louisville Ladder, Inc.*, 2012 WL 5989435, at *2 (M.D. Fla. Nov. 30, 2012) (plaintiff not in privity where he did not buy directly from the defendant); *McKissic v. Country Coach Inc.*, 2008 WL 616093, at *4 (M.D. Fla. Mar. 3, 2008) (no privity between plaintiff and manufacturer for vehicle sold by authorized third-party dealer).

Plaintiff apparently seeks to create privity by asserting that he (and other Nationwide Class members) "have had sufficient direct dealings with either Defendant or its agents (including Generac authorized dealers or solar contractors-the companies that installed their residential solar energy systems) to establish privity of contract." Compl. ¶ 114. This is unavailing. Haak has not alleged any direct pre-sale dealings with Generac, and his attempts to turn third-party dealers into agents fall far short of the clear requirements of Florida law.

Under Florida law, to demonstrate that a dealer is the actual or real agent of Generac, Mr. Haak "would have to allege and ultimately prove: 1) acknowledgement by [Generac] that [the dealer] was acting as its agent; 2) acceptance of the undertaking by [the dealer]; and 3) control by [Generac] over [the dealer's] day-to-day activities during the course of the agency." *Ocana v. Ford Motor Co.*, 992 So. 2d 319, 326 (Fla. 3d DCA 2008) (citing *Goldschmidt v. Holman*, 571 So. 2d 422, 424 n.5 (Fla. 1990)).

Nowhere does Haak make factual allegations that could pass muster for any of those requirements, much less all three. Indeed, he does not even identify the purported agent who sold him his system. Certainly, merely claiming that he purchased a product from an authorized dealer or installer is not enough. *See DA Air Taxi LLC v. Diamond Aircraft Indus. Inc.*, 2009 WL 10668152, at *3 (S.D. Fla. July 7, 2009) (alleging product was purchased from an "authorized . . . distributor, specialist, and representative," among other things, insufficient to allege agency); *see also Karhu v. Vital Pharms.*, 2013 WL 4047016, *7 (S.D. Fla. Aug. 9, 2013) ("[C]ourts have repeatedly found that merely purchasing a product from an authorized dealer does not establish privity with the manufacturer") (citing cases). As such, Plaintiff cannot "execute an end-run around Florida's historic privity requirement by employing principal-agent theory in this case." *Ocana*, 992 So. 2d at 326.

Perhaps anticipating the failure of his attempt to plead privity, Haak asserts that privity is "not required" because he and all other putative class members are "intended third-party beneficiaries of contracts between Defendants and its authorized dealers, and specifically of Defendant's implied warranties." Compl ¶ 114. However, a plaintiff

must do more than make conclusory assertions that the plaintiff was an intended third-party beneficiary. Indeed, allegations that plaintiffs "were the intended third-party beneficiaries of 'contacts between [a manufacturer] and its dealers'" and '[the manufacturer's] implied warranties' fall short" of invoking the exception to the privity requirement, "even if the third-party beneficiary exception exists under Florida law." *Padilla v. Porsche Cars N. Am., Inc.*, 391 F. Supp. 3d 1108, 1119 (S.D. Fla. 2019); *see also, e.g., Rife v. Newell Brands, Inc.*, 2022 WL 4598666, at *19 (S.D. Fla. Sept. 30, 2022) (dismissing implied warranty claims where, "[e]ven if" the "[p]laintiffs could bring their claims as third-party beneficiaries," the complaint did "little more than assert the *legal conclusion* that the Plaintiffs are third-party beneficiaries of the contracts between our Defendants and their retailers"); *Leon v. Cont'l AG*, 301 F. Supp. 3d 1203, 1224 (S.D. Fla. 2017) ("A claim for a breach of implied warranty under a third-party beneficiary theory, if it exists, does not arise from the conclusory assertion that Plaintiffs were 'the intended third-party beneficiaries of contracts between Defendants and its dealers.'").

Moreover, no such third-party beneficiary exception to the privity requirement exists. Although Plaintiff appears to rely on a split in Florida federal district courts regarding such an exception, several recent Florida district court decisions have analyzed and rejected a "third-party beneficiary" exception. *See Rife*, 2022 WL 4598666, at *18-19 (reviewing Florida law and rejecting third-party beneficiary exception); *Cardenas v. Toyota Motor Corp.*, 418 F. Supp. 3d 1090, 1110 & n.6 (S.D. Fla. 2019) (rejecting third-party beneficiary exception and citing reasoning in *Padilla*);

*Padilla*, 391 F. Supp. 3d at 1117 ("consistent with this Court's prior rulings – and with the overwhelming weight of Florida authority . . . this Court declines to follow *Sanchez-Knutson*"); *Tershakovec v. Ford Motor Co.*, 2018 WL 3405245, at *10 (S.D. Fla. July 12, 2018) (rejecting third-party beneficiary exception).

These decisions are in line with Florida law, which is clear that privity is required for a breach of implied warranty claim. In *Kramer v. Piper Aircraft Co.*, the Florida Supreme Court expressly approved an opinion that explained that "'the doctrine of strict liability in tort supplants *all no-privity*, breach of implied warranty cases,'" but "'did not result in the demise of the contract action of breach of implied warranty, as that action remains . . . *where privity of contract is shown*.'" 520 So. 2d 37, 39 (Fla. 1988) (quoting *Affiliates for Evaluation and Therapy, Inc. v. Viasyn Corp.*, 500 So.2d 688, 692 (Fla.3d DCA 1987)) (emphasis added). Since the *Kramer* decision, Florida courts have consistently required privity to bring an implied warranty claim. *See, e.g.*, *Ocana*, 992 So. 2d at 325; *Rentas v. DaimlerChrysler Corp.*, 936 So. 2d 747, 751 (Fla. 4th DCA 2006); *Brophy v. DaimlerChrysler Corp.*, 932 So.2d 272, 274-75 (Fla. 2d DCA 2005); *Mesa*, 904 So. 2d at 458; *Cerasini v. Am. Honda Motor Co.*, 916 So. 2d 843, 847 (Fla. 2d DCA 2005).

## II.   Plaintiff's Fraud Claims Should Be Dismissed For Failure To State A Claim.

Haak has failed to state his claims sounding in fraud (Counts II-V) with the particularity required by Rule 9(b), and more fundamentally, these counts do not state viable claims as a matter of law, and are barred by the economic loss rule.

A.     *Plaintiff's Allegations Do Not Meet Rule 9(b)'s Heightened Pleading Standard.*

In order to alert defendants to the precise allegations against them and to protect them "against spurious charges of immoral and fraudulent behavior," Rule 9(b) requires plaintiffs to "state with particularity the circumstances constituting fraud." *Omnipol, a.S. v. Worrell*, 421 F. Supp. 3d 1321, 1334 (M.D. Fla. 2019) (Covington, J.), *aff'd sub nom. Omnipol, A.S. v. Multinat'l Def. Servs., LLC*, 32 F.4th 1298 (11th Cir. 2022); Fed. R. Civ. P. 9(b). This heightened pleading standard applies to all claims sounding in fraud. *Douse v. Boston Sci. Corp.*, 2018 WL 3536080, at *2, *5-*6 (M.D. Fla. July 23, 2018) (fraudulent misrepresentation, fraudulent concealment, and negligent misrepresentation must be pleaded with particularity); *Lamm v. State St. Bank & Trust*, 749 F.3d 938, 951 (11th Cir. 2014) (negligent misrepresentation sounds in fraud under Florida law and is therefore subject to Rule 9(b) pleading requirement).

Fulfilling this obligation requires a plaintiff to "establish the who, what, when, where, and how of the fraud." *Omnipol*, 421 F. Supp. 3d at 1334 (citing *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008)). More specifically, Rule 9(b) "requires a complaint to set forth: (1) precisely what statements or omissions were made in which documents or oral representations; (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) them; (3) the content of such statements and the manner in which they misled the plaintiff, and; (4) what the defendant obtained as a consequence of the fraud." *Garrett-Alfred v. Facebook, Inc.*, 540 F. Supp. 3d 1129, 1138 (M.D. Fla. 2021) (quoting *In re Galectin Therapeutics, Inc. Secs. Litig.*, 843 F.3d 1257, 1269 (11th Cir. 2016)).

The Complaint lacks a single allegation pleaded with the required particularity.

1.     *Plaintiff Fails To Plead Fraudulent or Negligent Misrepresentation With Particularity.*

Fraudulent misrepresentation[4] has four elements under Florida law: "(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in *reliance* on the representation." *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010) (emphasis in original). Negligent misrepresentation requires "(1) a misrepresentation of material fact that the defendant believed to be true but which was in fact false; (2) that defendant should have known the representation was false; (3) [that] the defendant intended to induce the plaintiff to rely on the misrepresentation; and (4) [that] the plaintiff acted in justifiable reliance upon the misrepresentation, resulting in injury." *Arlington Pebble Creek, LLC v. Campus Edge Condo. Ass'n, Inc.*, 232 So. 3d 502, 505 (Fla. 1st DCA 2017) (citation omitted). Plaintiff has not come close to pleading the elements of either claim with particularity.

Courts regularly dismiss misrepresentation claims based solely on vague and conclusory allegations, particularly when they fail to identify any specific representations that the defendant is supposed to have made. This Court has dismissed claims of common law fraud when the complaint "contains no allegations of **any** specific statement made by [a defendant] to Plaintiffs." *Omnipol*, 421 F. Supp. 3d at

---

[4] Plaintiff asserts duplicative causes of action in Counts III (Common-Law Fraud) and IV (Fraudulent Misrepresentation). Because these causes of action are the same and have identical elements, they are considered together and referred to as "fraudulent misrepresentation."

1345 (emphasis in original). For example, assertions that a product was misrepresented as "safe and effective for its intended and reasonably foreseeable use" fail to support either fraudulent or negligent misrepresentation claims under Rule 9(b), because they neither identify a defendant's "precise alleged statements" nor describe how the alleged representations were conveyed to the plaintiff. *Douse*, 2018 WL 3536080, at *4. Even when a plaintiff has asserted that a defendant made a specific statement, misrepresentation claims are insufficient if the complaint fails to allege the defendant knew the statement was false when made, or fails to explain how it would have harmed the plaintiff when it was made *after* the transaction the plaintiff is challenging. *Omnipol*, 421 F. Supp. 3d at 1345-1346; *Douse*, 2018 WL 3536080, at *3.

Plaintiff does not identify a single false statement that Generac allegedly made, let alone a representation on which he relied. The Complaint includes a few isolated references to unspecified "misrepresentations," Compl. ¶¶ 9, 38, 41-42, but otherwise relies on the generic claim that Generac "represented to Plaintiff and Plaintiff's residential solar contractors and Class Members and Class Members' solar contractors that its PWRcell solar energy and battery storage systems were safe, fit for the purpose for which they were intended, and that Generac was experienced and skilled in designing and manufacturing such products." *Id.* ¶ 36.[5] This claim is purely conclusory

---

[5] *See also* Compl. ¶¶ 135, 144 (reciting the same allegation of indeterminate "false statements" made regarding the PWRcell system's fitness for its intended purpose and marketable quality) and ¶ 152 (stating that "Defendant made material facts [sic] that Defendant believed to be true about the ability to function and safety of the SnapRS 801 switches," by which Plaintiff apparently intends to allege an unspecified misrepresentation or misrepresentations).

and fails to specify any statement that any person affiliated with Generac made at any time or place, or for any purpose.

In one instance, Plaintiff alleges that Generac "reassured" PowerHome Solar ("PHS," an installer of residential solar systems) that "a firmware update would remedy the [SnapRS] issue," but does not identify the time, place, or person making that representation, explain how it affected Plaintiff, or even identify it as a false statement, let alone one that Generac knew or should have known was false. *Id.* ¶ 58, 62. Similarly, the only concrete statement alleged in the entire Complaint to have been made by a particular person at a particular time—a statement by Generac employee Jeffrey McAndrew to PHS about Generac's investigation of the cause of the alleged "issue" with the SnapRS 801—is not asserted, or even implied, to be false. Compl. ¶ 57. Plaintiff does not allege that this statement was relayed to him, that he relied on it, or that it led to any injury he sustained.

These sparse allegations do not identify the "what" or "how," let alone the "who, when, or where" necessary to plead misrepresentation under Rule 9(b). In fact, they fail to identify "**any** specific statement" Generac made to Plaintiff, or any false statement made by Generac to any person at all. *Omnipol*, 421 F. Supp. 3d at 1345.

      2.    *Plaintiff Fails To Plead Fraudulent Concealment With Particularity.*

"To state a claim for fraudulent concealment under Florida law, a plaintiff must allege facts sufficient to establish the following: (1) the defendant concealed or failed to disclose a material fact; (2) the defendant knew or should have known that the material fact should be disclosed; (3) the defendant knew its concealment of the fact

would induce the plaintiff to act; (4) the defendant had a duty to disclose the material fact; and (5) the plaintiff relied on the misrepresentation to his or her detriment." *Koski v. Carrier Corp.*, 347 F. Supp. 3d 1185, 1196 (S.D. Fla. 2017) (citations omitted).

Like misrepresentation claims, fraudulent concealment claims that plead mere "conclusory allegations" and fail to "allege specific facts or materials that were concealed" will be dismissed. *Garrett-Alfred*, 540 F. Supp. 3d at 1138. It is *not* sufficient to assert that a defendant concealed alleged "dangers" from plaintiffs, or that a product was "not safe." *Id.* (dismissing fraudulent concealment claim that failed to allege any "specific information related to the [purported] dangers" concealed, such as safety reports). For example, courts in this district have dismissed fraudulent concealment claims asserting that a manufacturer concealed information it possessed about the "risk of adverse events" and the alleged facts that its product was "not safe" and was "manufactured negligently," because plaintiff "does not allege a single fact that was specifically concealed by" the manufacturer. *Douse*, 2018 WL 3536080 at *5-*6.

Even if a complaint advances beyond generic statements about purportedly known product hazards or defects to plead specific facts or materials concealed (the "what" and "how"), it will still fail to meet its pleading burden if it lacks allegations of "who," "when," and "where." *Koski*, 347 F. Supp. 3d at 1197 (complaint containing "no allegations concerning who was involved in the fraudulent scheme, the time period or location of the scheme, or how each of the Defendants accomplished the fraudulent concealment" was "wholly insufficient to meet the heightened pleading requirements of Rule 9(b)"); *Garrett-Alfred*, 540 F. Supp. 3d at 1138 (dismissing claim

where the "allegations fail to identify who should have warned [plaintiffs], when they should have been warned, and where they should have been warned.")

Haak again sets forth only conclusory statements that fail to identify any specific facts concealed, or any person who concealed them at any time or in any place. The Complaint alleges that Generac "concealed or failed to disclose material facts concerning the defects and safety hazards of the SnapRS 801 switches," and that the SnapRS 801s had a design defect causing them to turn on and off repeatedly, which could impede energy production and could cause overheating, deformation, or potentially fires. Compl. ¶¶ 3-4, 7, 37, 72, 121-122. Plaintiff never points to any specific information about alleged hazards caused by the purported defect that Generac possessed but failed to disclose, such as safety reports. *Garrett-Alfred*, 540 F. Supp. 3d at 1138. Indeed, to the extent that the Complaint attributes knowledge of alleged SnapRS defects or hazards to Generac in non-conclusory fashion, it does so by alleging that Generac *disclosed* an investigation of SnapRS issues to PHS. Compl. ¶¶ 55, 57.

Insofar as these allegations could be construed to specify facts concealed, they nonetheless fail to plead facts with sufficient particularity on other grounds. In particular, Plaintiff never identifies any person who withheld information from him or the putative class and provides no indication of "the time period or location of the scheme" to conceal material facts or the time, place, or manner in which Plaintiff and the putative class should have been so informed. *Koski*, 347 F. Supp. 3d at 1197; *Garrett-Alfred*, 540 F. Supp. 3d at 1138.

As a result, none of Plaintiff's fraud allegations can pass muster under Rule 9(b) and must be dismissed.

> B.    *Plaintiff Does Not And Cannot Allege Reliance On Any Alleged Misrepresentation Or Omission By Generac.*

Haak has not pleaded reliance on any purported misrepresentation or omission. As noted, *supra*, Counts II through V all require a showing that the plaintiff relied upon a misrepresentation or omission. *Butler*, 44 So. 3d at 105 (fraudulent misrepresentation); *Arlington Pebble Creek*, 232 So. 3d at 505 (negligent misrepresentation); *Koski*, 347 F. Supp. 3d at 1196 (fraudulent concealment). But Plaintiff cannot have relied upon the misrepresentations or omissions he claims Generac made, because he purchased his Generac products *before* Generac is alleged to have become aware of any defect.

Plaintiff states that he contracted to have his residential solar energy system installed "*in July 2020*," and alleges that Generac knew the SnapRS 801 was defective "*as early as April 2021*." ¶¶ 13, 3 (emphasis added). Plaintiff cannot have relied on any misrepresentation or omission by Generac in purchasing his system because, according to his allegations, Generac first became aware the SnapRS 801 was defective nine months after his purchase. Generac could not have made a fraudulent misrepresentation or omission before it was aware of the purported defect in the product.

C.      Counts II, III, IV and V Are Barred By the Economic Loss Rule.

Even if the fraud counts had been adequately pleaded, and even if Plaintiff could allege reliance on a misrepresentation or omission, all four counts should be dismissed pursuant to Florida's economic loss rule because Plaintiff claims only economic losses. "[T]he economic loss rule is a judicially created doctrine that sets forth the circumstances under which a tort action is prohibited if the only damages suffered are economic losses." *Tiara Condo. Ass'n v. Marsh & McLennan Cos.,* 110 So. 3d 399, 401 (Fla. 2013) (citation omitted). An economic loss is defined as "damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits—without any claim of personal injury or damage to other property." *Id.* (citation omitted).

Under the rule, in cases involving allegedly defective products, economic losses may not be recovered without a claim to personal injury or injury to property other than the product. *Id.* at 404. In defining property other than the product, courts have noted that "[w]hen a defective product is 'an integral or component part' of a larger item, then damage to the larger item 'caused by this component part was not damage to separate property.'" *Dero Roofing, LLC v. Triton, Inc.*, 2022 WL 14636884, at *3 (M.D. Fla. Oct. 25, 2022) (citation omitted); *Turbomeca, S.A. v. French Aircraft Agency, Inc.*, 913 So. 2d 714, 717 (Fla. 3d DCA 2005) ("Courts have refused to bifurcate products into parts where a component part harms or destroys the finished product.")

Although the Florida Supreme Court in *Tiara* held that the economic loss rule applies only in cases in "the products liability context," numerous decisions have

clarified that the rule applies to claims involving allegedly defective products styled as fraud or negligent misrepresentation claims. *Vazquez v. Gen. Motors, LLC*, 2018 WL 447644, at *5-*6 (S.D. Fla. Jan. 16, 2018); *Melton v. Century Arms, Inc.*, 243 F. Supp. 3d 1290, 1300–1302 (S.D. Fla. 2017); *Koski*, 347 F. Supp. 3d at 1197-1198 (citing four additional opinions in the Middle and Southern Districts of Florida).

Plaintiff's four fraud-based claims all revolve around the allegations that Defendant's SnapRS 801 component was a defective product, and the only alleged harms that Plaintiff identifies constitute economic losses. The Complaint alleges that Haak suffered damages consisting of the costs of replacing SnapRS devices and "troubleshooting" his solar energy system (if any), increased electrical bills incurred as a result of his system functioning at less than full efficiency, and unspecified "damage" to "Plaintiff's and Class Members' residential solar energy systems and/or property." Compl. ¶¶ 10, 75. Plaintiff further asserts that one of the inverters in his Generac PWRcell system was damaged, and that he paid more than $7,000 in energy bills for power that would have been produced by a fully functioning solar energy system. *Id.* ¶¶ 19, 24. However, he does not allege any personal injury or damage to any property other than the inverter or the SnapRS components themselves. Plaintiff himself admits that the SnapRS 801s "were a component part" of his "residential solar system," *Id.* ¶ 25, and therefore damage to the inverter that formed part of that system cannot constitute separate property damage. All of the other harm Plaintiff purportedly suffered is textbook economic loss—replacement costs and additional expenses

consequent to the allegedly defective product—and the economic loss rule applies to bar all his fraud claims.

> D.  *The Fraudulent Concealment Count Should Also Be Dismissed Because Generac Owes No Duty To Plaintiff.*

Count II also fails for the independent reason that Plaintiff cannot plead that Generac owed him a duty to disclose any fact. The duty to disclose, a requirement of any claim for fraudulent concealment, arises within a fiduciary relationship or similar relationship of trust or confidence. *R.J. Reynolds Tobacco Co. v. Bessent-Dixon*, 313 So. 3d 173, 174 (Fla. 1st DCA 2021) (citation omitted). "In a commercial transaction in which 'the parties are dealing at arm's length, a fiduciary relationship does not exist because there is no duty imposed on either party to protect or benefit the other.'" *Id.* at 175 (citation omitted). Failure to allege such a "special relationship" leaves any claim based on an alleged duty to disclose subject to dismissal. *DJ Lincoln Enters., Inc. v. Google LLC*, 2022 WL 203365, at *3 (11th Cir. Jan. 24, 2022); *Aguilo v. Cognizant Tech. Sols. U.S. Corp.*, 2022 WL 2106077, at *4 (M.D. Fla. June 10, 2022) (fraudulent concealment claim dismissed where plaintiffs alleged no disclosure duty based on special relationship).

Plaintiff includes the bare allegation that Generac "had a duty to disclose" the alleged facts that Plaintiff says it concealed, Compl. ¶ 124, but this legal conclusion is unsupported by any factual statement suggesting a special relationship of trust between Generac and Plaintiff. Purchasing a consumer product is a quintessential arm's length

commercial transaction, and Plaintiff has failed to allege a special relationship of trust between himself and Generac for the simple reason that he cannot do so.

## III.   Count VI Should Be Dismissed On Two Independent Grounds.

Plaintiff's unjust enrichment count is subject to dismissal both because an express warranty governs his rights and because it is not pleaded with particularity.

"[A] plaintiff cannot maintain a claim for unjust enrichment if there is an express warranty governing the plaintiff's rights." *Koski*, 347 F. Supp. 3d at 1195 (citation omitted); *see also Alhassid v. Nationstar Mortg. LLC*, 771 F. App'x 965, 969 (11th Cir. 2019); *Diamond "S" Dev. Corp. v. Mercantile Bank*, 989 So. 2d 696, 697 (Fla. 1st DCA 2008). Unjust enrichment may be pleaded in the alternative only if a party contests the existence of an express contract underlying the dispute. *Speier-Roche v. Volkswagen Grp. of Am., Inc.*, 2014 WL 1745050, at *8 (S.D. Fla. Apr. 30, 2014). Moreover, "where the unjust enrichment claim relies upon the same factual predicates as a plaintiff's legal causes of action, it is not a true alternative theory of relief but rather is duplicative of those causes of action." *Koski*, 347 F. Supp. 3d at 1196 (citation omitted). Here, Haak does not dispute the existence or validity of Generac's written warranty. *See* Compl. ¶¶ 110-111 & 115-116 (relying on Generac's written warranty). Nor does he raise any separate factual allegations to support his unjust enrichment claim. *Id*. ¶¶ 161-167.

The lack of separate factual allegations supporting the unjust enrichment cause of action likewise means that Plaintiff must plead the elements of unjust enrichment

with particularity pursuant to Rule 9(b). *Space Coast Credit Union v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 295 F.R.D. 540, 545 (S.D. Fla. 2013) (unjust enrichment claim based on allegations of fraudulent conduct must be pleaded with particularity); *Anheuser-Busch InBev*, 2021 WL 3666312, at *7-*8 (same). Haak simply recites the legal elements of an unjust enrichment claim in Count VI, clad only with slight references to Defendant, and otherwise relies on the conclusory allegations in the remainder of the Complaint. These allegations do not meet Rule 9(b)'s requirements for the reasons shown above, and Count VI should be dismissed on this ground as well.

## Conclusion

For the foregoing reasons, Plaintiff's Complaint fails to state a claim on which relief could be granted. Moreover, because Plaintiff cannot remedy the defects identified through amendment, the Complaint should be dismissed with prejudice.

Dated:  December 28, 2022                Respectfully submitted,


By:   /s/ Samantha C. Duke
      Charles P. Mitchell
      Florida Bar No. 0818240
      Samantha C. Duke
      Florida Bar No. 91403
      RUMBERGER, KIRK & CALDWELL, P.A.
      P.O. Box 1873
      Orlando, Florida 32802
      Tel: 407-872-7300
      cmitchell@rumberger.com
      sduke@rumberger.com

      Michael J. Gill, *admitted Pro Hac Vice*
      Michael A. Olsen, *admitted Pro Hac Vice*
      MAYER BROWN LLP
      71 South Wacker Drive

Chicago, Illinois 60606
Tel: 312-782-0600
mgill@mayerbrown.com
molsen@mayerbrown.com

Elspeth V. Hansen, *admitted Pro Hac Vice*
MAYER BROWN LLP
Two Palo Alto Square, Suite 300
3000 El Camino Real
Palo Alto, CA 94306
Tel.: 1-650-331-2043
ehansen@mayerbrown.com

## **Local Rule 3.01(g) Certification**

I certify that defense counsel conferred with counsel for Plaintiff via teleconference in an effort to resolve the disputes referenced in the above motion, and the parties were unable to agree on the resolution of all or part of the motion.

By: */s/ Samantha C. Duke*
Samantha C. Duke, Florida Bar No. 91403
*Counsel for Defendant Generac Power Systems, Inc.*

## **Certificate of Service**

I hereby certify that on December 28, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to the following: Jacob A. Flint at Jacob@jacobflintlaw.com; James J. Rosemergy at Jrosemergy@careydanis.com; and Matthew Lee Baldwin at Matthew@vargasgonzalez.com.

By: */s/ Samantha C. Duke*
Samantha C. Duke, Florida Bar No. 91403
*Counsel for Defendant Generac Power Systems, Inc.*